

**F I L E D**

JUN 2 0 2018

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**RECEIVED**

JUN 2 0 2018

MICHAEL T. MASON
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. |
| | ) | |
| vs. | ) | **18CR 380** |
| | ) | |
| FELIX OMOROGBE, PATRICIA | ) | Violations: Title 18, United States |
| OMOROGBE, DOLAKPO ALAO, JULIET | ) | Code, Sections 2, 371, |
| ARTHUR-OGUNYOYE, and RHONDA | ) | 1035, 1347, and 1349 |
| SUTTON. | ) | |
| | ) | Title 42, United States |
| | ) | Code, Section 1320a-7b(b) |
| | ) | |
| | ) | **UNDER SEAL** |

**JUDGE ALONSO**

**MAGISTRATE JUDGE FINNEGAN**

## COUNT ONE

The SPECIAL AUGUST 2017 GRAND JURY charges:

1.  At times material to this Indictment:

### The Medicare Program

a.  The Medicare program was a federal health care program providing benefits to persons who were 65 years of age or older, or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services, a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were often referred to as Medicare "beneficiaries."

b.  Medicare was a "health care benefit program," as defined in Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined in Title 42, United States Code, Section 1320a-7b.

1

c.  The Medicare program included coverage under two primary components, hospital insurance ("Part A") and medical insurance ("Part B"). Part A of the Medicare program covered the cost of home health care services such as skilled nursing services.

d.  By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies and procedures, rules, and regulations issued by CMS and its authorized agents and contractors. Health care providers were given and provided with online access to Medicare manuals and service bulletins describing proper billing procedures and billing rules and regulations.

e.  Medicare Part A regulations required health care providers enrolled with Medicare to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting the actual treatment of the patients to whom services were provided and on whose behalf claims for payment were submitted. These records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of payments made to the health care provider under the Part A program.

f.  To receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a paper form, containing the required information appropriately identifying the provider, patient, and services rendered.

g.  A home health agency was an entity that provided health care services to Medicare beneficiaries in their homes. Home health care services included but were not limited

2

to skilled nursing services. Medicare covered home health care services when beneficiaries needed skilled care and were homebound.

h.      Home health care services were billed to Medicare in 60-day periods known as episodes of care. Medicare reimbursed home health care companies at a higher level for the episode when more services were provided.

i.      For a beneficiary to be eligible to receive home health care services covered by Medicare, a physician was required to certify that the patient needed skilled care and was homebound. In addition, the home health agency was required to provide the beneficiary with a comprehensive assessment of the beneficiary's health status, as conducted by a registered nurse. The registered nurse was required to independently assess the beneficiary's homebound status.

j.      The comprehensive assessment required by Medicare was also referred to as the Outcome and Assessment Information Set, or OASIS. The health information collected during the comprehensive assessment was required to be reported to Medicare, and Medicare used the information to calculate the amount the home health agency would be paid for the episode of care. Medicare paid the home health agency more for an episode of care when the comprehensive assessment indicated the beneficiary's clinical condition was more severe.

### The Defendants and Related Companies

k.      A&Z Home Healthcare, Inc. ("A&Z") was a home health care company, located in Lansing, Illinois, that enrolled in Medicare and purported to provide home health care services to patients in their homes.

l.      Dominion Home Health Care, Inc. ("Dominion") was a home health care company, located in Lansing, Illinois, that enrolled in Medicare that purported to provide home health services to patients in their homes.

3

m.     Alliance Home Health Care Inc., later named Alliance Personal Care ("Alliance"), was a home health care company, located in Hammond, Indiana, that enrolled in Medicare that purported to provide home health services to patients in their homes.

n.     Serenity Marketing, Inc. ("Serenity") was a company, located in the Northern District of Illinois, that operated under the name Serenity Living, and that provided unlawful patient referrals, including Medicare beneficiaries, to nursing agencies located in the Northern District of Illinois and elsewhere, including A&Z, Dominion, and Alliance.

o.     Physician Practice 1 was an Illinois corporation owned and operated by Physician 1. Physician Practice 1 maintained clinics in Chicago, Illinois, Aurora, Illinois, and Elgin, Illinois.

p.     Defendant FELIX OMOROGBE, a resident of Cook County, Illinois, was an owner and operator of A&Z, Dominion, and Alliance.

q.     Defendant PATRICIA OMOROGBE, a resident of Cook County, Illinois, and a registered nurse, was an owner and operator of A&Z and Dominion. PATRICIA OMOROGBE was the spouse of FELIX OMOROGBE.

r.     Defendant DOLAKPO ALAO, a resident of Highland, Indiana, and a registered nurse, was an owner and operator of Alliance.

s.     Defendant JULIET ARTHUR-OGUNYOYE, a resident of Cook County, Illinois and a registered nurse, enrolled beneficiaries in home health services at A&Z and Dominion and worked as Dominion's "agency supervisor."

t.     Defendant RHONDA SUTTON, a resident of Cook County, Illinois, worked as an unlicensed medical assistant for two physicians who purportedly ordered beneficiaries to receive home health services from A&Z and Dominion.

4

u. Sundae Williams was the owner and operator of Serenity Marketing.

v. Elaine Anderson was a patient marketer who provided unlawful patient referrals, including Medicare beneficiaries, to nursing agencies in the Northern District of Illinois and elsewhere, including A&Z, Dominion, and Alliance.

w. Employee 1 was an unlicensed office employee of A&Z.

x. Physician 1 was a licensed physician who owned and operated Physician Practice 1.

y. Physician 2 was a licensed physician who provided services to patients of Physician Practice 1 and received payments from Dominion.

2. From in or around January 2009 and continuing through in or around April 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

PATRICIA OMOROGBE,
JULIET ARTHUR-OGUNYOYE and RHONDA SUTTON,

defendants herein, did conspire with each other as well as others, known and unknown to the Grand Jury to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

**Purpose of the Conspiracy**

3. It was the purpose of the conspiracy for PATRICIA OMOROGBE, JULIET ARTHUR-OGUNYOYE, RHONDA SUTTON, and others to unlawfully enrich themselves by, among other things, submitting and causing the submission of false and fraudulent claims to

5

Medicare for home health care services, and diverting the proceeds of the fraud scheme for their personal use and benefit.

**Manner and Means**

Medicare Beneficiaries Obtained Through Unlawful Bribes and Kickbacks

4.      It was part of the conspiracy that FELIX OMOROGBE, PATRICIA OMOROGBE, DOLAKPO ALAO, Employee 1, and others, known and unknown, caused Serenity Marketing and others to supply A&Z, Alliance, and Dominion with the names and contact information of Medicare beneficiaries who they recruited through direct marketing to Medicare beneficiaries, rather than through outreach to hospitals, skilled nursing facilities, or primary care physicians.

5.      It was further part of the conspiracy that FELIX OMOROGBE, PATRICIA OMOROGBE, DOLAKPO ALAO, Employee 1, and others, known and unknown, made bribe and kickback payments to Elaine Anderson, Serenity Marketing and others so that they would supply Medicare beneficiaries to A&Z, Alliance, and Dominion.

6.      It was further part of the conspiracy that FELIX OMOROGBE and PATRICIA OMOROGBE signed checks from A&Z, Alliance, and Dominion bank accounts to Serenity Marketing, Elaine Anderson, and others, known and unknown, in exchange for referrals of Medicare beneficiaries to A&Z, Alliance, and Dominion.

7.      It was further part of the conspiracy that FELIX OMOROGBE and PATRICIA OMOROGBE, on behalf of A&Z and Dominion, certified to Medicare that they agreed to abide by the Medicare laws, regulations and program instructions that applied to A&Z and Dominion, and that they understood that payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions, including the Federal anti-kickback statute.

6

<u>Physician Orders Certifying Beneficiaries as Eligible to Receive Home Health Care Obtained
Through Unlawful Bribes and Kickbacks</u>

8.      It was further part of the conspiracy that FELIX OMOROGBE and PATRICIA
OMOROGBE signed checks totaling $25,300 from A&Z to RHONDA SUTTON, who was then
employed by Physician Practice 1 as an unlicensed medical assistant.

9.      It was further part of the conspiracy that RHONDA SUTTON deposited at least
$150,000 in cash across at least five bank accounts between in or about October 2010 and in or
about October 2012, a period during which she was employed by and receiving regular paychecks
from Physician Practice 1.

10.     It was further part of the conspiracy that RHONDA SUTTON forged the signature
of Physician 1 on forms purporting to certify patients to receive home health care from A&Z and
Dominion and then faxed the forms from her home in South Holland, Illinois to A&Z and
Dominion.

11.     It was further part of the conspiracy that the phone and fax numbers listed as the
contact information for Physician 1 on forms certifying patients to receive home health care from
A&Z and Dominion were registered to the home address of RHONDA SUTTON and were not the
actual phone and fax numbers used by Physician 1 or Physician Practice 1.

12.     It was further part of the conspiracy that A&Z and Dominion received over $6.2
million in payments from Medicare for claims identifying Physician 1 as the certifying physician
for services purportedly provided between January 2009 and December 2012.

13.     It was further part of the conspiracy that, in or about October 2012, RHONDA
SUTTON left the employment of Physician Practice 1 and began working with Physician 2.

14.     It was further part of the conspiracy that, in or about October 2012, A&Z and Dominion began listing Physician 2 as the certifying physician for patient patients that A&Z and Dominion previously identified as having been certified by Physician 1.

15.     It was further part of the conspiracy that the phone and fax numbers listed as the contact information for Physician 2 on forms certifying patients to receive home health care from A&Z and Dominion were registered to the home address of RHONDA SUTTON and were not the actual phone and fax numbers used by Physician 2.

16.     It was further part of the conspiracy that RHONDA SUTTON deposited over $13,000 in cash across five bank accounts from in or about November 2012 through in or about September 2013, a time period during which she deposited no paychecks from Physician Practice 1, Physician 1, A&Z or Dominion and deposited only one check for $128 from Physician 2.

Beneficiaries Enrolled in Home Health Care Regardless of Qualifications or Need

17.     It was further part of the conspiracy that PATRICIA OMOROGBE, JULIET ARTHUR-OGUNYOYE, and others enrolled and caused to be enrolled Medicare beneficiaries in home health care at A&Z and Dominion even though they were aware that the beneficiaries did not need or qualify for the care, causing Medicare to pay A&Z and Dominion for home health care services that were not medically necessary and were not provided.

Medical Records Falsified Upon Beneficiaries' Enrollment

18.     It was further part of the conspiracy that PATRICIA OMOROGBE, JULIET ARTHUR-OGUNYOYE, and others falsified information in medical records, including but not limited to OASIS forms, to make it appear that beneficiaries were homebound and qualified for home health care services when in fact they were not homebound and did not qualify.

19. It was further part of the conspiracy that PATRICIA OMOROGBE, JULIET ARTHUR-OGUNYOYE, and others falsified information in medical records, including but not limited to OASIS forms, to make it appear that beneficiaries were sicker than they truly were, and needed assistance that they did not in fact need, so that Medicare would pay more money to A&Z and Dominion.

<u>Beneficiaries Subjected to Pre-Planned Discharges and Re-Enrollments</u>

20. It was further part of the conspiracy that PATRICIA OMOROGBE, JULIET ARTHUR-OGUNYOYE, and others subjected Medicare beneficiaries to and caused them to be subjected to a pre-planned schedule of enrollments, discharges, and re-enrollments, such that beneficiaries were discharged from care and re-enrolled in care regardless of whether they qualified for or wanted it.

21. It was further part of the conspiracy that PATRICIA OMOROGBE, JULIET ARTHUR-OGUNYOYE, and others falsified information in medical records, including but not limited to OASIS forms, to make it appear that the medical condition of beneficiaries repeatedly improved leading up to pre-planned discharges and deteriorated prior to the time of readmissions.

<u>Fraudulent Claims Submitted to Medicare</u>

22. It was further part of the conspiracy that PATRICIA OMOROGBE, JULIET ARTHUR-OGUNYOYE, and others caused A&Z and Dominion to submit and caused to be submitted claims to Medicare for services that were not medically necessary, and caused Medicare to make more than $24 million in payments for home health care services to A&Z and Dominion, at least $6.2 million of which were fraudulent.

23. It was further part of the conspiracy that FELIX OMOROGBE, PATRICIA OMOROGBE, and others would disburse, and cause the transfer and disbursement of, funds from

the various bank accounts of A&Z and Dominion to FELIX OMOROGBE, PATRICIA OMOROGBE, JULIET ARTHUR-OGUNYOYE, and others.

24.     It was further part of the conspiracy that the defendants and others misrepresented, concealed, hid, and caused to be misrepresented, concealed, and hidden, the purpose of the conspiracy and acts done in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH SEVEN

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1.    The allegations of Paragraph 1 of Count One of this Indictment are incorporated herein as if fully restated.

2.    From in or around January 2009 and continuing through in or around February 2018, in the Northern District of Illinois, and elsewhere,

PATRICIA OMOROGBE and
JULIET ARTHUR-OGUNYOYE,

defendants herein, participated in a scheme to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, which scheme is further described below.

### Purpose of the Scheme and Artifice

3.    It was the purpose of the scheme and artifice for PATRICIA OMOROGBE and ARTHUR-OGUNYOYE to unlawfully enrich themselves and others through the submission of false and fraudulent Medicare claims for home health services provided to Medicare beneficiaries who did not need or qualify for the care.

### The Scheme and Artifice

4.    The allegations contained in Paragraphs 4 through 24 of the Manner and Means section of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

### Acts in Execution of the Scheme and Artifice

11

5.     On or about the dates enumerated below, in the Northern District of Illinois and elsewhere,

PATRICIA OMOROGBE and JULIET ARTHUR-OGUNYOYE,

defendants herein, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is Medicare, and its agents, and obtained by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program as follows:

| Count | Defendant | Medicare Ben'y | Approx. Purported Dates of Service | Approx. Date Billed | Items Billed | Approx. Amount Paid by Medicare |
|---|---|---|---|---|---|---|
| 2 | ARTHUR-OGUNYOYE | E.A. | 3/21/2014 – 5/19/2014 | 6/13/2014 | Home Health Episode of Care (A&Z) | $1,975.09 |
| 3 | ARTHUR-OGUNYOYE | R.D.C. | 8/8/2013 – 10/6/2013 | 10/11/2013 | Home Health Episode of Care (Dominion) | $2,672.59 |
| 4 | ARTHUR-OGUNYOYE | G.B. | 4/18/2014 – 6/16/2014 | 7/1/2014 | Home Health Episode of Care (A&Z) | $2,421.46 |
| 5 | P. OMOROGBE | G.B. | 6/17/2014- 8/15/2014 | 9/12/2014 | Home Health Episode of Care (A&Z) | $2,508.68 |
| 6 | ARTHUR-OGUNYOYE | R.D. | 2/28/2014 – 4/28/2014 | 5/13/2014 | Home Health Episode of Care (Dominion) | $2,627.95 |
| 7 | P. OMOROGBE | R.D. | 4/29/2014 – 6/27/2014 | 7/8/2014 | Home Health Episode of Care (Dominion) | $2,220.47 |

12

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS EIGHT THROUGH TEN

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1.      The allegations of Paragraph 1(a) to 1(l), 1(q), and 1(s) of Count One of the Indictment are incorporated here.

2.      On or about dates set forth in the table below, in the Northern District of Illinois, Eastern Division, and elsewhere,

PATRICIA OMOROGBE
and JULIET ARTHUR-OGUNYOYE,

defendants herein, did knowingly and willfully make and cause to be made a materially false, fictitious, and fraudulent statement and representation, and make and cause to be made a materially false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry, in a matter involving a health care benefit program, that is, Medicare, in connection with payment for healthcare benefits, items, and services, by causing to be submitted claims containing fabricated information, including information that made it appear that beneficiaries were homebound and sicker than they actually were, namely:

| Count | Defendant | Medicare Ben'y | Approx. Purported Dates of Service | Approx. Date Billed | Items Billed | Approx. Amount Paid by Medicare |
|-------|-----------|----------------|-----------------------------------|---------------------|--------------|--------------------------------|
| 8 | ARTHUR-OGUNYOYE | E.A. | 8/2/2013 – 9/30/2013 | 11/12/2013 | Home Health Episode of Care (A&Z) | $2,512.68 |
| 9 | PATRICIA OMOROGBE | R.D. | 4/29/2014 – 6/27/2014 | 7/8/2014 | Home Health Episode of Care (Dominion) | $2,220.47 |
| 10 | ARTHUR-OGUNYOYE | G.B. | 8/13/2013 – 10/11/2013 | 10/29/2013 | Home Health Episode of Care (A&Z) | $2,512.68 |

All in violation of Title 18, United States Code, Sections 1035(a)(2) and 2.

## COUNT ELEVEN

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1.     The allegations of Paragraph 1(a) to 1(r) and 1(t) to 1(y) of Count One of the Indictment are incorporated here.

2.     From in or around 2009 and continuing through in or around December 2014, at Cook County, in the Northern District of Illinois, and elsewhere,

FELIX OMOROGBE,
PATRICIA OMOROGBE,
and
DOLAKPO ALAO

defendants herein, together with others known and unknown to the Grand Jury, did conspire with others known and unknown, to knowingly and willfully offer and pay any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, from defendants FELIX OMOROGBE, PATRICIA OMOROGBE, DOLAKPO ALAO, and others, to Elaine Anderson, Serenity Marketing, and others, to induce the referral of patients to A&Z, Alliance, and Dominion for the furnishing and arranging for the furnishing of services for which payment may be made in whole or in part under a Federal health care program, namely, Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

### Purpose of the Conspiracy

3.     It was a purpose of the conspiracy for FELIX OMOROGBE, PATRICIA OMOROGBE, DOLAKPO ALAO, Elaine Anderson, Sundae Williams, and others known and unknown to unlawfully enrich themselves and others by, among other things, making and receiving unlawful payments to obtain Medicare beneficiaries whose home health care services could be billed to Medicare, and diverting proceeds of the unlawful payments for the personal use of the defendants and their co-conspirators.

## Manner and Means

4.      It was part of the conspiracy that defendants and their co-conspirators agreed to unlawfully enrich themselves and others by (i) offering, paying, soliciting, and receiving bribe and kickback payments in return for referring Medicare beneficiaries to A&Z, Alliance, and Dominion, (ii) using the referred beneficiary information to obtain payments from Medicare for home health services purportedly provided by A&Z, Alliance, and Dominion, and (iii) concealing the offer, solicitation, payment, and receipt of the bribes and kickbacks.

5.      It was further part of the conspiracy that FELIX OMOROGBE, PATRICIA OMOROGBE, DOLAKPO ALAO, and others known and unknown offered and paid bribes and kickbacks on behalf of A&Z, Alliance, and Dominion to Elaine Anderson, Serenity Marketing, and others in return for the referral of Medicare beneficiaries to A&Z, Alliance, and Dominion for home health services paid by Medicare.

6.      It was further part of the conspiracy that Elaine Anderson, Sundae Williams and others known and unknown solicited and received bribes and kickbacks from FELIX OMOROGBE, PATRICIA OMOROGBE, DOLAKPO ALAO, and others in exchange for referring Medicare beneficiaries to A&Z, Alliance, and Dominion for home health services paid for by Medicare.

7.      It was further part of the conspiracy that PATRICIA OMOROGBE and DOLAKPO ALAO executed sham contracts with Serenity Marketing on behalf of A&Z, Alliance, and Dominion.

8.      It was further part of the conspiracy that PATRICIA OMOROGBE, DOLAKPO ALAO, Employee 1 and other employees of A&Z and Alliance communicated with employees of Serenity Marketing to keep track of the beneficiaries referred to A&Z and Alliance and calculate

17

the bribe and kickback payments that Serenity Marketing was owed in exchange for referring Medicare beneficiaries to A&Z and Alliance.

9.     It was further part of the conspiracy that FELIX OMOROGBE and DOLAKPO ALAO used cash or money orders to make concealed payments to Serenity Marketing in excess of the payments by check for the amounts set forth in the sham contracts.

10.     It was further part of the conspiracy that PATRICIA OMOROGBE and Employee 1 provided checks, cash and money orders to Sundae Williams in person at A&Z's office in exchange for Serenity Marketing's referrals of Medicare beneficiaries to A&Z and Alliance.

11.     It was further part of the conspiracy that FELIX OMOROGBE established Alliance as a new home health agency that could service patients in Indiana and installed DOLAKPO ALAO as an owner and administrator of Alliance.

12.     It was further part of the conspiracy that DOLAKPO ALAO falsely certified to Medicare that she was the sole owner of Alliance and the sole person with managing control of Alliance, when in fact FELIX OMOROGBE retained an ownership interest in Alliance and exerted control over Alliance's finances.

13.     It was further part of the conspiracy that FELIX OMOROGBE used Alliance's bank accounts to continue making payments by check to Serenity Marketing in exchange for referrals of Medicare beneficiaries even after A&Z and Dominion temporarily stopped making such payments following an interview of FELIX OMOROGBE and PATRICIA OMOROGBE by federal agents.

14.     It was further part of the conspiracy that FELIX OMOROGBE, PATRICIA OMOROGBE, DOLAKPO ALAO, and their co-conspirators submitted to Medicare, and caused

to be submitted to Medicare, claims for home health services purportedly provided to beneficiaries referred to A&Z, Alliance, and Dominion by Elaine Anderson, Serenity Marketing, and others.

15.　　It was further part of the conspiracy that FELIX OMOROGBE, PATRICIA OMOROGBE, DOLAKPO ALAO, and their co-conspirators misrepresented, concealed, hid, and caused to be misrepresented, concealed, and hidden, the purpose of the conspiracy and the acts done in furtherance of the conspiracy.

### Overt Acts

16.　　In furtherance of and to effect the objects of the conspiracy, the defendants committed and caused to be committed, in the Northern District of Illinois, at least one of the following overt acts, among others:

17.　　The opening of bank accounts for Alliance.

18.　　The initial transfer of $20,000 from an A&Z bank account to Alliance's bank account.

19.　　The creation and execution of sham contracts which falsely stated that Serenity Marketing would be paid, in whole or in part, based on the hours of "marketing time" Serenity Marketing provided to A&Z, Alliance and Dominion.

20.　　The following bribes and kickbacks paid to Elaine Anderson:

| Defendant | Approx. Date | Payment Amount | Company on Check |
|---|---|---|---|
| Felix Omorogbe | July 30, 2008 | $2,000 | A&Z |
| Felix Omorogbe | August 15, 2008 | $1,500 | A&Z |
| Felix Omorogbe | October 2, 2008 | $2,000 | A&Z |
| Felix Omorogbe | October 31, 2008 | $1,000 | A&Z |
| Felix Omorogbe | December 18, 2008 | $2,750 | A&Z |

| | | | |
|---|---|---|---|
| Felix Omorogbe | March 27, 2009 | $1,925 | A&Z |
| Felix Omorogbe | March 16, 2010 | $2,200 | A&Z |
| Patricia Omorogbe | March 4, 2011 | $1,375 | A&Z |
| Felix Omorogbe | December 2, 2011 | $1,925 | A&Z |

21.    The following bribes and kickbacks paid to Serenity Marketing:

| Defendant | Approx. Date | Payment Amount | Company on Check |
|---|---|---|---|
| Felix Omorogbe | May 17, 2011 | $5,000 | Alliance |
| Patricia Omorogbe | May 17, 2011 | $3,000 | A&Z |
| Patricia Omorogbe | August 19, 2011 | $5,500 | A&Z |
| Felix Omorogbe | August 19, 2011 | $1,000 | Alliance |
| Felix Omorogbe | March 29, 2013 | $1,800 | Alliance |
| Dolakpo Alao Felix Omorogbe | March 29, 2013 | $900 | N/A (Money Order Purchased from USPS 46321) |
| Dolakpo Alao Felix Omorogbe | March 29, 2013 | $1,000 | N/A (Money Order Purchased from USPS 46321) |
| Dolakpo Alao Felix Omorogbe | March 29, 2013 | $700 | N/A (Money Order Purchased from USPS 46324) |
| Dolakpo Alao Felix Omorogbe | March 29, 2013 | $1,000 | N/A (Money Order Purchased from USPS 46321) |

22.    The following checks from Alliance to DOLAKPO ALAO:

| Defendant | Approx. Date | Amount | Company Name |
|---|---|---|---|
| Felix Omorogbe | March 29, 2013 | $3,600 | Alliance |
| Felix Omorogbe | June 21, 2013 | $1,950 | Alliance |

20

| Felix Omorogbe | July 3, 2013 | $1,950 | Alliance |

23.     The bribe and kickback transactions charged in Counts Twelve through Fourteen of this Indictment, each of which constitutes an overt act in furtherance of the conspiracy:

| Defendant | Approx. Date | Payment Amount | Company on Check |
|---|---|---|---|
| Felix Omorogbe | June 21, 2013 | $1,950 | Alliance |
| Dolakpo Alao Felix Omorogbe | June 21, 2013 | $1,000 | N/A (Money Order Purchased from USPS 60438) |
| Dolakpo Alao Felix Omorogbe | June 21, 2013 | $950 | N/A (Money Order Purchased from USPS 60438) |
| Dolakpo Alao Felix Omorogbe | July 3, 2013 | $300 | N/A (Money Order Purchased from USPS 60438) |
| Dolakpo Alao Felix Omorogbe | July 3, 2013 | $1,000 | N/A (Money Order Purchased from USPS 60438) |
| Dolakpo Alao Felix Omorogbe | July 5, 2013 | $650 | N/A (Money Order Purchased from Currency Exchange) |
| Felix Omorogbe | July 5, 2013 | $1,950 | Alliance |
| Felix Omorogbe | September 27, 2013 | $1,950 | Alliance |
| Felix Omorogbe | November 7, 2014 | $650 | Alliance |

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWELVE THROUGH FOURTEEN

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1.      The allegations of Paragraph 1(a) to 1(n), 1(p) to 1(r), and 1(u) of Count One of this Indictment, and the allegations of Count Eleven of this Indictment, are incorporated here.

2.      On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere,

FELIX OMOROGBE
and
DOLAKPO ALAO,

defendants herein, as set forth below, did knowingly and willfully offer and pay, directly and indirectly, overtly and covertly, remuneration, to a person to induce the referral of Medicare beneficiaries to A&Z and Alliance, for the furnishing and arranging for furnishing of services for which payment may be made in whole or in part under a Federal health care program, namely Medicare:

| Count | Defendant | Approx. Date | Payment Amount | Form of Payment & Approx. Amount |
|-------|-----------|--------------|----------------|----------------------------------|
| 12 | Dolakpo Alao Felix Omorogbe | June 21, 2013 | $3,900 | Check from Alliance for $1,950; $1,000 Money Order Purchased from USPS 60438; $950 Money Order Purchased from USPS 60438) |
| 13 | Dolakpo Alao Felix Omorogbe | July 5, 2013 | $3,900 | ($300 Money Order Purchased from USPS 60438; $1,000 Money Order Purchased from USPS 60438; |

22

| | | | | $650 Money Order Purchased from Currency Exchange; $1,950 Check from Alliance) |
|---|---|---|---|---|
| 14 | Felix Omorogbe | September 27, 2013 | $1,950 | Alliance |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION

The SPECIAL AUGUST 2017 GRAND JURY further alleges:

1.　　The allegations in Counts One through Fourteen of this Indictment are realleged and incorporated here for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

2.　　As a result of their violations of Title 18, United States Code, Sections 371, 1035, 1347 and 1349, and Title 42 United States Code, Section 1320a-7b(b), as alleged in the foregoing Indictment, the defendants,

FELIX OMOROGBE,
PATRICIA OMOROGBE,
DOLAKPO ALAO,
RHONDA SUTTON, and
JULIET ARTHUR-OGUNYOYE,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any and all right, title and interest they may have in any property, real and personal, that constitutes and is derived, directly and indirectly, from gross proceeds traceable to commission of the charged offenses.

3.　　If any of the forfeitable property described above, as a result of any act or omission by the defendants:

　　　　a.　　Cannot be located upon the exercise of due diligence;

　　　　b.　　Has been transferred or sold to, or deposited with, a third party;

　　　　c.　　Has been placed beyond the jurisdiction of the Court;

　　　　d.　　Has been substantially diminished in value; or

　　　　e.　　Has been commingled with other property which cannot be divided without difficulty;

24

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

    All pursuant to Title 18, United States Code, Section 982(a)(7).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION
ACTING CHIEF

_____

UNITED STATES DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION
CHIEF – HEALTH CARE UNIT

25